## Holloway *vs* Conner's heirs *et al.*

CHANCERY.

ERROR TO THE NELSON CIRCUIT.

*Remainders.    Husband and wife.    Execution.*

Case 107.

JUDGE BRECK delivered the opinion of the Court.

May 6.

. IN 1819 Richard Head departed this life, leaving a will which was in same year duly proven and admitted to record in the Office of the Nelson County Court.

The case stated.

After making several specific devises, the testator devised all the residue of his estate to his wife, for life, and at her death to be equally divided between his daughter, Lucinda Head, and the children of his daughter, Prudence Conner, wife of Daniel Conner.

In 1829, Charles Holloway and his wife, Lucinda, they having intermarried subsequently to the execution of the will, exhibited their bill in the Nelson Circuit Court, alledging that the widow of the testator had died, and praying for a settlement and division of the estate according to the will.

Prudence Conner and her husband and children and Lewis, the surviving executor of said Head, were made defendants.

In 1831, Conner and wife and children exhibited their cross bill against Holloway and wife, and also against Samuel Hahn, Turner Wilson, William Penny, Robert Able, James M. Wright, and William H. Pope. They charge that Hahn, Wilson, &c. had obtained possession of certain slaves, devised by said Richard Head to Lucinda Holloway and the children of Prudence Conner;

that the possession of said slaves had been fraudulently obtained; and that the parties were confederating for the purpose of defrauding the devisees of Head out of their rights in them.

These defendants answered, denying any such intention, but admitting that they had the possession, respectively, of the slaves as charged.

Pope claimed the slave in his possession by purchase from Holloway, in 1829. The others claimed the interest of Holloway and wife as purchasers under executions against Holloway; that Holloway was entitled to an undivided moiety of said slaves, in right of his wife, Lucinda, which had been devised to her by her father, Richard Head. They pray a decree allowing them one half of the money for which the slaves may be sold, or that they may be permitted to keep them, upon their paying one half the value thereof to Mrs. Conner's children, and finally, that justice and equity may be done.

In 1835, Conner and wife exhibited an original bill against same parties, charging that they were about to remove the slaves without the limits of the State, and obtained an injunction and restraining order.

The three suits were afterwards consolidated, and progressed and were tried together.

In 1840, Lucinda Holloway filed her petition in all the cases, suggesting her destitute condition, the intemperate, improvident, and prodigal habits of her husband, and praying that out of the remnant of her patrimony reasonable provision might be made for her support, and a trustee appointed to take charge of her portion.

In 1841, Charles Holloway died, and his wife filed her answer, asserting her claim to one half of the slaves in possession of Wilson, &c. and to a reasonable hire during the time they had had possession. She denies that the slaves had ever been in her possession, or that of her husband.

In 1842, the causes were heard and an interlocutory rendered, in which it is decided that the interest of Holloway and wife, in the slaves sold under execution, passed to the purchasers, and that Pope acquired the interest of Holloway and wife in the slave purchased by him; that

Mrs. Conner's children were entitled to one half the slaves and one half the reasonable hire while in possession of those claiming the interest of Holloway and wife. A commissioner was appointed to ascertain and report the value of the hire, and as the slaves could not be divided in kind, to make sale of the slaves and their increase.

Upon the coming in of the commissioner's report, the Court pronounced a final decree, dismissing the bill of Mrs. Holloway, and decreeing to the children of her sister one half the proceeds of the sale and one half the hire of all the slaves in contest.

To this decree Lucinda Holloway prosecutes this writ of error.

The only errors assigned are: 1st. That the Court erred in not decreeing to her one half the proceeds of the sale of the slaves sold under executions, and of their increase and hire. 2nd. In overruling her exceptions to the report of the commissioner.

No error is assigned in reference to the slave claimed by the defendant, Pope.

Before we notice the more important questions involved in the first error suggested, we will dispose of the second. Exceptions were filed on behalf of the plaintiff in error, to so much of the commissioner's report as related to the hire of one of the slaves in contest. The Court overruled the exception, and considering the age of the slave and the confliction in the testimony, as to the value of his services, we are not prepared to say that the exception should have been sustained.

Cross errors are suggested by the defendant, Wilson, which we will here notice and dispose of. He insists that he was improperly decreed to pay hire upon the slaves, Bill and Lucy, and if liable at all, that too much was decreed against him, and that the slaves were improperly decreed to be sold. It will be sufficient to say that we are very clearly of opinion that in neither of the particulars suggested is there any error, of which the defendant, Wilson, has any cause to complain. He had received the entire benefit of the services of the slaves when he claimed but a moiety, and it was certainly equitable that he should account to those owning the other

HOLLOWAY
*vs*
CONNER'S HEIRS.

A remainder in slaves, 'tho vested in the wife before coverture, does not vest in the husband until reduced to possession, & where the remainder is held in conjunction with others and no separate possession, but a suit pending for division, they are not liable to sale under execution for the debts of the husband.

moiety for half the hire, which we are satisfied was not estimated too high. As to the sale of the slaves, it was in accordance with the prayer contained in his answer.

The questions involved in the first error suggested will now be considered, and that the attitude of the parties may be clearly understood, it will be necessary to bear in mind that the bill of Holloway and wife, praying for a settlement and division of the estate of her father, and of which the slaves in contest constituted a part, was filed and process issued on the first of May, 1829. The slaves were sold under executions, against Holloway, in 1830. And it is also worthy of remark that the notes and claims, upon which the judgments were obtained, on which the executions issued, seem all to have originated subsequent to the exhibition of the bill.

It does not appear that any division of the estate devised by the testator, Head, to his daughter, Lucinda, and the children of his daughter, Conner, had ever taken place. Nor does it appear that Holloway had ever had any of the slaves in possession.

At what time the life estate of the mother of Mrs. Holloway terminated does not very clealy appear. Nor does it appear at what time Holloway was married, but as the will bears date in September, and was admitted to record in November, 1819, it may be assumed that it was not till after the death of her father.

Under such circumstances the first question is, whether Holloway had such an interest in these slaves, in 1830, as was subject to sale under execution? His wife, previous to her intermarriage, had a vested remainder in them. But as the interest was not devised to her while a *feme covert,* and as she was not possessed of the slaves, or her portion in them, while a *feme sole,* her interest did not pass and vest in her husband, in virtue of our Statute of 1798.

The case does not come within either of the contingencies provided for in that act.

The interest of Holloway then, as to these slaves, depended upon his rights, as husband, to the chattels of his wife according to the general and recognized principles of law.

The interest became absolutely his when reduced to possession. But the interest in this case was undivided and joint and never reduced to possession, and if the language of this Court in *Kilby* vs *Haggin*, (3 *J. J. Marshall*, 215,) be applicable to this case, then the interest of the wife did not vest in the husband until, by distribution, (or in this case, by division,) that interest was reduced to unity and identity. And according to the principles and reasons of the case referred to, Holloway had not such an interest in the slaves as was subject to execution. Such sales, as in this instance, are almost invariably made at most ruinous sacrifices, and we think ought not to be encouraged.

But whether Holloway had, or not, such an interest in the slaves as was subject to sale under execution cannot, in this case, affect the rights of his wife. The purchaser under execution could certainly not acquire any greater interest than Holloway himself had. Holloway, at the time, was, in conjunction with his wife, appealing to the Chancellor to aid him in reducing to possession the interest of his wife in these slaves. Under such circumstances, whatever interest he had was subject to the equity of his wife, or to a reasonable provision for her support, and the purchasers acquired no interest except subject to the same equity. The principle is now well, and as we think, righteously settled, that the Chancellor will give no aid to the husband in acquiring possession of the wife's estate till suitable provision is made for the support of herself and children.

If the husband wants the aid of Chancery to enable him to obtain possession of his wife's property, he must do what is equitable, and whether the suit for the wife's debt, legacy, or portion, be by the husband or his assignees or creditors, the result is the same, that a proper settlement upon the wife must first be made. If Holloway had been living upon the hearing of these causes and could have acquired no portion of these slaves till provision was made for his wife, neither can these purchasers under executions against him, who claim to stand in his shoes. But there is still a further view of the case, upon which we apprehend the decree cannot be sustained.

But if a sale be made of a vested interest in remainder in the wife, (before possession by the husband,) to satisfy his debts, the purchaser will not be permitted by the Chancellor to take the possession until the wife be suitably provided for.

When a suit is pending by husband & wife, for property claimed through the wife, if the husband die the wife is entitled, as survivor, and a purchaser of the interest of the husband, during the pendency of the suit, if the husband die before its termination, acquires nothing.

The suit of Holloway and wife was pending for reducing to possession her estate in the slaves at the time of the sale. The Chancellor had taken jurisdiction of the subject, and the principle is well settled that in the event of the death of either, before the object is attained, the survivor becomes entitled to the interest of the parties in the ultimate recovery: and hence during the pendency of such a suit each has an interest, contingent, in the event of the death of either, before its termination, upon survivorship. The wife, in this case survives, and is therefore entitled to the entire recovery or interest in the slaves sought in the suit to be reduced to the possession of the husband. After the commencement of the suit the interest of the husband was wholly contingent, and the interest of an assignee or purchaser, during the pendency of the suit, would partake of the same character.

If correct in these views, it results that the purchasers under executions acquired no available interest in the slaves in controversy, and that they are responsible to the plaintiff for one half the reasonable hire.

—But the Chancellor will allow a credit for the purchase money, to be a set-off against her where the purchaser had the possession.

Whether they are entitled to any credit for the sums severally paid by them in their respective purchases may be well questioned. But as Holloway had a contingent interest in the slaves at the time, and as the sums paid were in discharge of his debts, and as the purchasers moreover unite in the prayer, in their answer, that justice and equity may be done, we are of opinion that they respectively be allowed, out of the hire, a credit for the sums actually paid by them in their several purchases.

We are of opinion, therefore, that the decree be reversed, so far as relates to the proceeds of the slaves sold by the commissioner and one half their hire, and the cause is remanded, that such decree may be rendered in favor of Lucinda Holloway as may be consistent with, and carry out the principles of this opinion, and that the plaintiff recover her costs.

*Grigsby* for plaintiff: *B. & A. Monroe* for Wilson.