THOMAS, &c.<br><i>vs</i><br>KENNEDY.

---

## Thomas, &c. *vs* Kennedy.

ERROR TO THE MADISON CIRCUIT.

*Reversion. Husband and wife. Settlement. Equity.*

CHIEF JUSTICE EWING delivered the opinion of the Court.—Judge BRECK did not sit in this case.

CHANCERY.<br><br>Case 46.<br><br>October 20.

UPON the petition of a part of the heirs of William Hume, deceased, and Joseph Kennedy, who claimed by purchase from her husband, the interest of Nancy Thomas, one of the heirs of the deceased, the Circuit Court of Madison decreed that two slaves which had been allotted to the widow as dower, who had died, should be sold for the purpose of a division, and appointed Simeon Hume a Commissioner to sell. Upon the coming in of the report showing the sale, Nancy Thomas claimed that share of the proceeds which was claimed by Kennedy, as a purchaser from her deceased husband. Kennedy moved for a rule against the Commissioner to pay the amount to him, and Mrs. Thomas resisting the payment and claiming that the same should be settled on her; with a view to a speedy adjustment of the matter, Mrs. Thomas, by consent of all parties, was made a defendant in the case, and as such was, by like consent, to have the same opportunity, and with the like effect, to resist the motion of Kennedy and the execution of the decree aforesaid, and with all the rights that she could have or obtain by any other proceedings in the case, and thereupon the following facts were agreed: "that the said Nancy Thomas was the daughter of William Hume, deceased, who died in-

Case stated and facts agreed on in the Circuit Court, and its decree.

testate, and was, at the time of his death, the owner of the two slaves in the petition mentioned; that after his death, they were allotted to his widow as dower, which she held as such till her death; that after the death of William Hume, said Nancy intermarried with Joel Thomas, who, during the lifetime of the said widow, for value received, sold and assigned the interest of his wife, said Nancy, in and to the said slaves so in the possession of the widow, to Joseph Kennedy, and died insolvent, in the lifetime of said widow, leaving his wife, Nancy, unprovided for, and in destitute circumstances; that said William Hume left several heirs as mentioned in the petition, who have an undivided interest in said slaves and in the proceeds of their sale." Upon these facts, Nancy Thomas resisted the payment to Kennedy, and claimed that her share should be paid over to her. But the Court overruled her application and ordered the payment to be made to Kennedy, and she has appealed to this Court.

It appears from the facts agreed, that though Nancy Thomas had an undivided reversionary interest or interest in remainder in the slaves, which accrued to her *when sole*, and never came to the possession of her husband, in his lifetime, nor could be reduced to possession. That this interest would have survived to the wife had it not been sold and transferred for a valuable consideration, is abundantly established by the authorities.

*Though the husband may transfer and assign the reversionary interest of the wife in a chattel, yet if before possession had by the assignee, the husband die insolvent and leave the wife destitute and unprovided for, and the Chancellor's interference be invoked in aid of the assignee, he will, at the instance of the wife, withhold it and regard the equity of the wife to a settlement as superior.*

But it has been long a vexed question, whether the husband may or may not defeat the wife's right of survivorship by an assignment of her interest for a valuable consideration, as he may defeat her right of survivorship by an assignment of her *chose in action*. Able authorities are arrayed on both sides of this question, and it is regarded at this day as not fully settled: 1 *Roper on Property, from* 234 *to* 251, and the authorities referred to; *Clancy on Rights, from* 140 *to* 150, and the authorities referred to; 2 *Story's Equity, from* 631 *to* 641, and the authorities cited; 2 *Kent's Commentaries, from* 136 *to* 143, and the authorities cited. Roper advocates the power of the husband to defeat, by assignment, the right of survivorship of the wife, and Clancy, with eminent ability, controverts his right. And our conclusion upon

the whole matter is, that the current of modern decisions is against the power of the husband. But this Court, in the case of *Meriweather* vs *Booker and wife*, (5 *Littell*, 258,) determined, without much apparent consideration or research of authorities, that the husband might bar her right by a sale of her interest in remainder in slaves. And a dictum to the same effect is to be found in the case of *Upshaw* vs *Upshaw et al*. (2 *Henning and Mun*. 389.) We do not deem it necessary, in this case, to overrule or affirm the principle settled in the former case and intimated in the latter. Conceding it to be the settled rule of this Court, as a naked principle, under which the assignee might shelter himself against the claims of the wife, if he could get the possession of the reversionary interest before he was arrested in his pursuit of it, yet we cannot concede, that if he has never obtained the possession, and a Court of Equity has obtained jurisdiction and *control over the interest or the proceeds, that the as-*signee will be allowed to receive it, against the claim and equity of the wife, to have a settlement and provision made out of it as her own patrimony, for her maintenance and support, especially when she has been left, as she has been in this case, by an insolvent husband in a destitute condition. If he takes it, freed from the wife's legal right of survivorship, by virtue of the assignment, yet he takes it subject to the wife's equity in it for her support. He takes it as the assignee of a *chose in action* takes, freed it is true from the wife's legal right of survivorship, but subject to her equity for a settlement. And whenever, in either case, the subject is brought within the cognizance and under the control of a Court of Equity, her equity to a provision will be regarded as paramount and superior to the claim of the assignee. Indeed, in such a case, the wife's equity would seem to present stronger ground for relief against the assignee of her reversionary interest than against the assignee of her *chose in action*. In the latter case, the claim assigned is susceptible of being reduced into present possession, and such assignment has been deemed a constructive reduction to possession by the husband. But in the former case the thing assigned is incapable, from its condition, to be reduced to imme-

THOMAS, &c.
*vs*
KENNEDY.

Such assignee takes the reversion fund from the wife's legal right of survivorship, but subject to her equity to have a settlement, which the Chancellor will, at her instance, enforce.

ROGERS, &c.
*vs*
DARNABY.

diate possession, and no constructive possession can be implied ; and as the right of the husband to his wife's personal chattels is made to depend upon his acquiring either actual or constructive possession of the same, during his life, the equity of the wife to a provision out of her reversionary interest would seem to stand upon higher ground than out of her mere *chose in action.* And it is made to stand upon higher ground according to the more modern decisions : 2 *Story's Equity,* 640, and the authorities cited; *Clancy on Rights, from* 144 *to* 150, and the authorities cited.

As the wife's interest in the proceeds of the sale of the slaves falls short of a competent provision for her, the whole amount should have been decreed to her. The order of the Circuit Court, directing the appellant's interest in the proceeds of the sale to be paid to Joseph Kennedy, the assignee of her husband, is therefore, reversed, and cause remanded, that a decree may be rendered directing the payment of the amount to be made to Nancy Thomas, the appellant, and she is entitled to her costs in this Court.

*Caperton* for plaintiffs : *Turner* for defendant.

---

COVENANT.

*Case* 47.

October 21.

# Rogers, &c. *vs* Darnaby.

ERROR TO THE BOURBON CIRCUIT.

*Sheriffs. Executions. Replevin.*

JUDGE BRECK delivered the opinion of the Court.

DARNABY, as relator, brought this action upon the official bond of Rogers, as Sheriff of the county of Bourbon, and recovered judgment against him and his sureties for $382 17, from which Rogers has appealed to this Court.

The point upon which the case turns will very clearly appear by a statement of the facts, about which there is no controversy, and of the law as expounded by the Court upon the trial to the jury.

The facts are these: In 1838, Hedges, as Sheriff of the county of Bourbon, levied an execution from the Fayette Circuit Court, in favor of Purnell Bishop and against James M. Coons and others, upon three slaves, as the property of Coons. In virtue of a writ of replevin, sued out by —— Johnson against the Sheriff and Bishop, the slaves were taken out of the possession of the Sheriff and delivered to Johnson. Upon the trial of the action of replevin, a verdict was found for the defendants, and a judgment for the return of the slaves. Johnson appealed to this Court, when, on the 22d November, 1839, the judgment was affirmed. On the 28th of the same month an execution issued upon a judgment of the Fayette Circuit Court, in favor of Darnaby, the relator, and against said James M. Coons, to the Sheriff of Bourbon. On the 12th of December following, Rogers, as Sheriff, levied this execution upon the three slaves, upon which the execution of Bishop had been levied by Hedges, the former Sheriff, and which had been taken out of his possession under the writ of replevin in favor of Johnson. Rogers subsequently summoned a jury to try the right of property, and whether said slaves were subject to the execution of Darnaby.

The jury returned, after reciting the previous levy by the former Sheriff, and that further proceedings were stayed by replevin, that the slaves were not subject to the execution of Darnaby, but were subject to the execution of Bishop, and thereupon the Sheriff released the slaves and returned the facts of the case: that he had levied upon the slaves, advertised them for sale, and being in dispute, he had summoned a jury who had found them not subject to the execution, and, therefore, no sale was made.

Upon motion, *ex parte*, the return was afterwards quashed.

As it does not affect the rights or liabilities of the parties we have deemed it unimportant to state, that both the old and the new Sheriff acted by deputy.

The slaves were subsequently, in June, 1840, sold under an execution upon Bishop's judgment, and also one in favor of Trimble by the Sheriff of Fayette, and after discharging the former execution, the residue of the pro-

ROGERS, &c.
vs
DARNABY.

ceeds, being three hundred and forty one dollars, was applied to the latter.

It was proved that the slaves, when Bishop's execution was first levied by Hedges, were the property of Coons, and had so continued till their sale; and that they were in Bourbon county in possession of Johnson during the time Darnaby's execution was in the hands of Rogers.

Upon these facts, the question arises upon the pleadings as to the liability of Rogers and his sureties upon the official bond of the former as Sheriff.

The instructions given by the Circuit Court.

The Court instructed the jury, "that if the slaves belonged to said Coons when Darnaby's execution was in said Sheriff's hands, and were then in Bourbon county, that they were subject to Darnaby's execution, and that it was the duty of the defendant, Rogers, to have levied said Darnaby's execution on said negroes, subject to the prior lien of said Bishop's execution, and to have held them by such levy, and he should have so returned on said execution; and not having done so, his return, as made, was insufficient and false, and so far as the relator was injured by the conduct of said Rogers in so doing, the defendants were responsible in this action, and that the plaintiff was entitled to recover to the extent of that injury, not exceeding what said negroes were worth, after deducting the amount of said Bishop's execution."

Instructions refused by the Circuit Court.

And the Court refused to instruct the jury, as moved by the defendants, "that the defendant, Rogers, had no right to levy Darnaby's execution on said slaves, until the levy of Bishop's execution thereon was released, or the execution satisfied; and that in virtue of said levy, said slaves were in the custody of the law, and not subject to be taken under execution against said Coons."

Whether the Court was correct in thus ruling the law, is the only question for our determination. It is a question, we apprehend, which has not hitherto been directly decided or presented for the consideration of this Court, nor have our researches for precedent or authority elsewhere been successful in entirely freeing the subject from doubt and difficulty.

In considering the question, these positions, we think, may be assumed as settled:

1st. That the old Sheriff, Hedges, in virtue of the levy of Bishop's execution, was vested with a special property in the slaves, and such a property as would enable him to maintain trespass or trover. It is even laid down in *Clerk* vs *Withers*, (1 *Salkeld*, 323,) that by the seizure of the Sheriff under execution, the property was divested out of the defendant and in abeyance. But that Hedges had acquired, in this case, a special property in the slaves and was entitled to their exclusive possession and control, there can be no question, we apprehend, and it is most obviously proper that such should be the case, as he was answerable for their loss or any injury to them through his neglect. Under the English practice, a Sheriff could not formerly return, that goods upon which he had levied had been *rescued*.

2d. That the old Sheriff had the same property in the slaves, the same right to their possession and control after as before the termination of his office, and of course, that he was to the same extent responsible.

3d. That of the final termination of the action of replevin, it was the duty of the old Sheriff to obtain possession of the slaves and sell them in discharge of Bishop's execution. To do this he required no additional authority. The authority acquired under the original levy was ample and undiminished, and *quo ad hoc*, he was still Sheriff.

The rule is, that "the same person who begins an execution shall end it;" and hence, according to the English practice, when a Sheriff had seized goods under execution, and before he made sale, was discharged from office, upon his failure to sell and bring the money into Court, a writ of *distringas nuper vicecomitem*, as it was called, was issued to the new Sheriff, requiring him to distrain upon the old, that he might sell the goods and bring the money into Court, or sell and pay over the money to the new Sheriff, that he might bring it in. This writ conferred no new authority, but was merely to compel the old Sheriff to act under the authority which he already possessed. In support of these positions the case in Salkeld referred to; *Wilbraham* vs *Snow*, (2 *Saunders*, 47, *note b*;) 2 *Lord Raymond*, 1075; *Watson on office of Sheriff*,

A Sheriff, by virtue of levy of an execution on personal property, is entitled to exclusive possession thereof.

A Sheriff's right to the exclusive possession of property levied on, is not impaired by his going out of office; nor are his powers and duties in relation thereto in any manner changed.

If property be taken from the possession of the Sheriff by writ of replevin, yet if the decision on that writ be in his favor, it is his duty to obtain the possession, sell the property and pay off the execution, tho' his term of office has expired.

