## Hord vs Hord, &c., Cox vs same.

### APPEAL FROM THE MASON CIRCUIT.

*Husband and wife. Mortgages. Choses in Action. Settlements.*

CHANCERY.

Case 20.

JUDGE BRECK delivered the opinion of the Court.

Sept. 19.

Case stated.

In 1840, Thornton Hord and Nancy his wife, executed a mortgage to Francis T. Hord, upon an undivided moiety in about one hundred acres of land, and fourteen slaves. The mortgage purports to be made to secure the payment of a debt for about six hundred dollars, due by Thornton to F. T. Hord, and also to indemnify the latter for any money he might advance for said Thornton and wife. The deed was in due time acknowledged and recorded in the Clerk's Office of the Mason County Court.

In 1841, George Cox recovered a judgment agaiust Thornton Hord, for about one hundred dollars, upon which execution issued, and was returned "no property found." Cox then exhibited his bill in Chancery, against Thornton Hord and wife, and F. T. Hord, alledging that the property embraced in the mortgage was more than sufficient to satisfy the morgage debt, and praying that the mortgagee might be compelled to foreclose his mortgage, and that the judgment of complainant might be discharged out of the mortgaged property.

F. T. Hord answered, and made his answer a cross bill, and prayed for a foreclosure of the mortgage, and a sale of the property for the payment of the debt due him.

Answer and cross bill of F. T. Hord.

HORD
vs
HORD, &c.

He alledges that the land and slaves embraced in the mortgage, had been devised by the father of the defendant, Nancy, to her mother during her life, and at her death, to be equally divided between the said Nancy, then Nancy Bowling, and her brother, Samuel Bowling.

Thornton Hord's answer.

Nancy Hord's answer.

Thornton Hord, in his answer, admits the justice of the claims set up against him, and does not resist a sale of the mortgaged property. Nancy Hord answers, that her interest in the slaves in contest, is the only remnant left of a handsome estate devised to her by her father; that her husband is improvident, and has and still provides badly for his family. She prays that the Chancellor, before he directs a sale of her interest in the slaves, will take care that suitable provision is made for the support of herself and her nine children, and that he will not permit her feelings towards her husband in the creation of liens upon her property for the payment of his debts, to reduce herself and children to poverty and want.

The facts proved in the cause.

It is in proof that Thornton Hord is insolvent; that the land embraced in the mortgage, had been sold under a previous mortgage; that an undivided moiety in the slaves, subject to the life estate of her mother, who was still living, constituted the only estate of the said Nancy, and that this had been devised to her by her father. Whether this estate accrued to her before or after her marriage, does not very certainly appear; but from the allegations in the cross bill of F. T. Hord, it may be inferred, that it accrued to her before.

Decree of the Circuit Court.

The Court below, at first rendered a decree *nisi*, for the payment of the mortgage debt, but subsequently dismissed both the original and cross bills, and Cox and F. T. Hord have severally appealed to this Court.

A Court of Equity will not aid the husband in reducing to possession the reversionary interest of the wife, until a suitable provision is made for her support. A creditor

The interest of Mrs. Hord in the motgaged slaves, is reversionary—a vested remainder accruing to her when *sole*, and which has never been reduced to possession by her husband. The doctrine is now well settled, that a Court of Equity will not aid the husband, nor his assignee, in reducing to possession such an estate, or interest in the wife, until suitable provision is made for her support. This principle was recognized by this Court,

in *Holloway* vs *Conner's heirs*, (3 *B. Mon.*, 397;) *Thomas* vs *Kennedy*, (4 *B. Monroe*, 235.)  Cox, as judgment creditor of the husband, seeking to subject the interest of the wife in these slaves, does not certainly occupy a more favorable attitude than would the husband or his assignee.

He is, therefore, entitled *to no relief, until a proper settlement is made upon Mrs. Hord.* And it may here be remarked, that in making a settlement of the wife's estate, it is the invariable practice of the Court, to take into consideration also the children.  No provision having been made for the wife, and it not appearing that her interest in the slaves exceeds an adequate provision for her, it results that Cox was entitled *to no relief.*

The objection relied upon by counsel, that Mrs. Hord, by uniting with her husband in the mortgage to F. T. Hord, has forfeited her right to assert her equity to a settlement, cannot be rendered available by Cox.  Even if the mortgage were conclusive upon her, which however, will be more particularly considered hereafter, the effect of it would only be to subject her interest in the slaves, so far as might be necessary to discharge the mortgage debt.  In no view of the case, is her interest thereby impaired to any greater extent.

It is true, as contended, that the testimony in reference to the sale of the land, embraced in the mortgage, and also as to the will of the father of Mrs. Hord, is of a secondary character, but no objection having been made to it in the Court below, it is too late to raise any here. Upon the whole, we are entirely satisfied, that the Court below was right in dismissing the bill of Cox.

The propriety of withholding from F. T. Hord any relief upon his cross bill, will now be considered.

It appears to be well settled, that the wife has full power, absolutely to dispose of personal property, vested in her *for her sole and separate use.*  No express power of appointment in such case, is necessary.  The power is implied when none is given.  It is settled, that she can mortgage her separate estate, for the payment of her husband's debts, and in such case, a Court of Equity will decree a foreclosure.

---

*Margin notes:*

HORD
*vs*
HORD, &c.

of the husband does not occupy a more favorable attitude.

In making a suitable provision for the support of the wife, her children should be considered.

Though a wife unite with her husband in a mortgage of her reversionary interest in property, yet she does not by such act, render it subject to the debts of her husband due to others.

HORD
*vs*
HORD, &c.

Bnt not so of
slaves held in re-
version.

But the interest of the wife in the mortgaged slaves was not of that charactar; it was not her *sole and separate property*, nor was it subject to the same control and disposition by her, as it would have been if of that character. But, as we have seen, it was a portion of her paternal estate, subject to her equity for a settlement. Whether she has waived that equity to any extent, by joining her husband in the mortgage, is the main question presented for consideration. The mortgage was acknowledged and recorded in the mode prescribed and required by the statutes of Kentucky regulating conveyances by husband and wife. It is contended those statutes, and more especially the act of '96, authorize a conveyance by husband and wife, of the interest of the wife in personal as well as real estate. The act of '96 is the only one which sustains, to any plausible extent, this position. Previous, as well as all subsequent acts regulating the mode of conveyance by husband and wife, have express reference to the dower or other interest of the wife in land; they have no reference to the conveyance or release of her interest in any other estate; and we are inclined to the opinion that a conveyance by husband and wife, of the interest of the wife in any other estate than land, was not contemplated and is not authorized by the act of '96. If then, the mortgage is not rendered effectual by our statutes, to pass the interest of Mrs. Hord in the slaves, the question arises whether her interest passed, or her equity is impaired by it, upon any other principle. Deriving no validity from any statutory provision, does the fact that the mortgage was acknowledged and recorded, entitle it to higher consideration or more weight, as to the wife, on that account?

In the case of *Wall* vs *Nelson*, (3 *Litt.* 395,) this Court decide that the wife, by uniting. with her husband, in a deed duly acknowledged and recorded, could release a grantor from a covenant of warranty, in a deed made to the wife; but from the reasons assigned, it may be inferred as the opinion of the Court, that she could not do it if it had not been connected with land. But in as much as she could, by uniting with her husband, convey the land to the grantor in the deed, containing the covenant,

and thereby indirectly release him, the Court decide that it was competent for her to do it directly. But in this case there was no connection between the slaves and land; and we do not consider the case referred to as establishing the principle that a conveyance by husband and wife, of the wife's interest in a chattel, would be valid as against the wife. We are inclined, therefore, to the opinion that the mortgage derives no additional validity as against the wife, from the fact that it was acknowledged and recorded.

Whether the rights of the wife in reference to her reversionary interest in personal estate, and reversionary *choses in action* would be affected by the assignment of the husband, by her consent, or by her uniting with him in the transfer or assignment, is a question which has not, we think, been decided by this Court.

In England the transfer of the wife in such cases, is made by the decree of a Court of Equity, after the wife has been personally examined in Court; and even after the examination and consent of the wife, the Court will often refuse to direct the transfer, except in a qualified manner; in some instances so as not to affect the wife's right by survivorship, and in other cases authorizing only a partial transfer. We find no case in which the transfer by husband and wife, of the wife's reversionary *choses in action* has been held valid so as to defeat her right of survivorship and equity to a settlement, unless such transfer has been made by order of Court: See 2 *Story's Equity*, 640, and *Roper on Husband and Wife*, 149 to 170, where the subject is fully examined and the authorities referred to. The doctrine seems to be well established, that the consent of the wife to the assignment by the husband, is not obligatory upon her.

We come, therefore, to the conclusion that Mrs. Hord, by uniting with her husband in the mortgage to F. T. Hord, has not waived or impaired her equity to a settlement; and as we have seen that the assignee of the husband is subject to the wife's equity, and that the interest of Mrs. Hord in the slaves in question, does not exceed an adequate provision for her, we are of opinion that the complainant, Hord, has not established his claim to any

*Margin notes:*

HORD
*vs*
HORD, &c.

Transfers of the reversionary interest of the wife in choses in action, were sometimes permitted by the Chancellor in England, so as not to affect the wife's right by survivorship, and sometimes partial transfers, which was the only mode; the statutes of Ky. have made no provision for such transfers.

A transfer of the right of the wife to choses in action or the reversion in slaves and personalty, though it divest the legal estate, is subject to the wife's right by survivorship and a suitable maintenance.

HACKLEY'S EX'S.
*vs*
SWIGERT.

relief in a Court of Equity. It is true the mortgage is a valid transfer from Thornton Hord, of all his interest in these slaves, to F. T. Hord; but the latter takes it subject to the wife's equity, and to her right of survivorship. The interest, therefore, if any thing, is uncertain and wholly contingent, and not such as a Chancellor, under existing circumstances, should afford any aid in subjecting to sale.

The decree, therefore, dismissing both the original and cross bill, is affirmed.

*Hord, Payne & Waller* for appellants.

---

ASSUMPSIT.

*Case* 21.

Sept. 21.

Case stated.