CASE 20—IN EQUITY—JANUARY 17.

# Ashby vs. Woolfolk.

### APPEAL FROM HOPKINS CIRCUIT COURT.

Under the law in force in 1843 a *feme covert* had the power, by uniting with her husband in a conveyance, properly acknowledged, to divest herself of any interest in real estate; but she had no power to make contracts respecting any property except land. (5 *B. Mon.*, 81; 1 *Met.*, 235.)

Transfer by the husband, in 1843, of the wife's interest in remainder in slaves and personalty, did not bar her equitable right to a settlement. That she united with him in the deed, and received a portion of the purchase money, does not operate as an equitable estoppel. All that the purchaser could ask in such case, and all that the chancellor would require at her hands, would be that she should refund the money thus received before she could obtain relief. The parties should be placed in *statu quo*. This case is unlike *Arnold vs. Wright*, (14 *B. Mon.*, 638.)

Matters in avoidance in an answer and cross-petition, not in the nature of a counter-claim or set-off, cannot, for want of a reply, be taken as true.

WADDILL & GORDON, for appellant, cited 7 *B. Mon.*, 535; 5 *Ib.*, 84; 1 *Met.*, 234; 4 *B. Mon.*, 237; 2 *Story's Eq.*, 640; *Clancy on Rights*, 144 to 150; *Story's Eq.*, 640; *Roper on Husband and Wife*, 149 to 170; 5 *B. Mon.*, 31; 7 *Ib.*, 348; 2 *Marsh.*, 108; 5 *Mon.*, 544; *Smith's Leading Cases Eq.*, 619, 642, 662, 666; *Story's Eq.*, 384, 385.

J. HARLAN, for appellee.

CHIEF JUSTICE STITES DELIVERED THE OPINION OF THE COURT:

Bounds Ashby died in 1831, leaving a will, whereby he devised to his wife, during her life, his entire estate, consisting of land, slaves, and personalty, and at her death said property was to be equally divided between the testator's children. The widow died in 1858, without having again married; and, after the death of the testator two of his children died intestate and without issue.

Virginia Ashby, one of the children and devisees in remainder, intermarried with Presley Ashby after her father's death, and, in 1843, she, with her husband, executed a deed to Woolfolk, purporting to convey to him "their entire interest in the estate of Bounds Ashby, deceased, including lands and tene-

ments, household and kitchen furniture, and negroes, horses, cattle, &c., of every description, that might be remaining, as due them in said estate at the death of Elizabeth Ashby, the widow and wife of said Bounds Ashby, agreeably to his will."

Soon after the death of the widow this suit was brought by some of the devisees in remainder for a sale and division of the estate. Virginia Ashby and her husband, together with Woolfolk, were made defendants.

The wife made her answer a cross-petition against Woolfolk, seeking, upon several grounds, to avoid the deed of 1843, and claiming an equitable settlement out of the proceeds of the sale of that share of the estate claimed by Woolfolk. To this Woolfolk responded, insisting upon his right to her entire interest in the estate by virtue of said deed ; denying her several allegations, and saying that she was estopped from asserting her equity, because she induced him to make the purchase and received the main part of the purchase money—she being, as is alleged, present at the transaction, and actively participating in the same.

During the progress of the case a sale of the property was made by consent—the proceeds to be disposed of upon final trial—and upon hearing Mrs. Ashby's claim to an equitable settlement was denied and her petition dismissed. Of this judgment she complains.

There can be no doubt that she was properly refused any part of the proceeds of the land. There was no fraud in obtaining the deed, nor indeed any valid objection shown to the same ; and as she had the power, by thus uniting with her husband in a conveyance properly acknowledged, to divest herself of any interest in real estate, and exercised such power, she has no right, legal or equitable, to assert any claim to the land or its proceeds.

But as to the slaves and personalty, or her interest therein, the deed was inoperative, so far as she was concerned. Under the law in force in 1843, a *feme covert* had no power to make contracts respecting any property except land ; (5 *B. Mon.*, 81 ; 1 *Met.*, 235 ;) and, unless her equitable right to a settle-

ment was barred by the husband's transfer, or by some act of her own in inducing Woolfolk to make the purchase, no sufficient reason existed for denying her the relief sought.

That such was not the effect of the husband's transfer, is too well settled in this State, to be now questioned. (4 *B. Mon.*, 235; 5 *B. Mon.*, 81; 14 *B. Mon.*, 638; 1 *Met.*, 235.)

Nor, in our opinion, was she guilty of any conduct in the transaction which should operate as an equitable estoppel. There is no evidence that she proposed the sale, or, in fact, that she had any agency in the affair, except to unite with her husband in the deed. On the contrary, it may be assumed, from the evidence, that the arrangement was proposed and effectuated by Woolfolk, to secure the payment of the debt owing him by the husband. The fact that the wife may have received a portion of the money in no wise opposes this view. It may have been paid to her by way of inducing the execution of the deed. But what amount she received, or under what circumstances it was paid, does not appear. The evidence on this point is altogether unsatisfactory. Nor does it matter, because, if she had received the whole, still the contract as to the slaves and personalty would, as to her, have been void. All that the purchaser could ask in such case, and all that the chancellor would require at her hands, would be, that she should refund the money thus received, before she could obtain relief.

It is very certain that no fraud was practiced on the purchaser by withholding from him the character or extent of the wife's interest. This is stated in the deed. The case, as it stands, is simply that of a purchaser resisting the wife's equity upon the ground that she made a contract, which, in legal contemplation, was void, and which the former is presumed to have known when he bought.

The charges in the amended cross-petition and answer of appellee, that the wife induced and procured the contract to be made, were matters in avoidance of her demand for an equitable settlement, and, in no sense, can be regarded as allegations in the nature of a counter-claim or set-off which, for want of a reply, could be taken as true.

The case is unlike *Arnold vs. Wright, supra.* There the wife stood by, saw her husband sell and receive pay for her interest, and failed to disclose to the purchaser what rights she had. Here the purchaser was fully apprised of the wife's interest, and was attempting to buy it. There the property or consideration which passed from the purchaser for the wife's interest had gone into the hands of another party, not privy to the sale, and had been disposed of for the purchase of a home for the wife, thus placing it out of the power of the chancellor to place the parties in *statu quo.* Here the parties can be placed in *statu quo,* by the payment of the money back to the purchaser; and the chancellor has control of the fund. But the important distinction is, that there the wife *induced* the purchaser to buy, and here there is no proof of any such conduct on the wife's part.

It results from what has been said, that there was nothing to prevent Mrs. Ashby from asserting her right to a settlement, and that the circuit court erred in refusing it. She was entitled to the proceeds of the slaves and personalty, less a sum sufficient to reimburse Woolfolk as herein indicated.

In regard to the amount to be paid Woolfolk to place him in *statu quo,* no difficulty is perceived. It is evident that the three hundred dollars mentioned in the deed, was paid for Mrs. Ashby's entire interest—including the land and personalty. The interest in the land passed, and the proceeds thereof he will receive. The interest in the other property should therefore only be charged with that proportion of the $300 which it bears towards the aggregate value of the entire interest, thus making the burden fall equally alike upon both land and personalty—the value to be fixed at the rates for which the property sold, and interest to be computed upon the amount to be paid Woolfolk out of the proceeds of the personalty, from the date of the deed in 1843, up to the final judgment herein.

Wherefore the judgment is *reversed,* and cause remanded for further proceedings not inconsistent with this opinion.