ROSA P. GRAVES, ET AL., *v.* R. C. HARRIS, ET AL.

**Husband and Wife—Wife's Right to Secure Estate.**

>   The wife has a right to claim a settlement out of estate descended
>   to her and may assert it by original bill at any time before it is re-
>   duced to actual possession by the husband.

**Right of Wife to Pay Husband's Debt.**

The wife has a right to allow her interest in a decedent's estate to be applied to pay her husband's debt and may go into a court of equity and have that interest settled upon her and thereby free it from the control of her husband and terminate his right to reduce it to possession and thus remove it beyond the reach of his creditors.

### APPEAL FROM MARION CIRCUIT COURT.

### April 22, 1876.

Opinion by Judge Cofer:

The appellant, Rose P. Graves, was entitled as one of the distributees and heirs of her father to over one thousand dollars as her share of the surplus personalty in the hands of his administrators, and to an interest in his real estate. The administrators held the note of her husband, George W. Graves, for over two thousand dollars.

She sold her interest in the land to her mother for $1,500. When the administrators were ready to distribute the surplus personal estate, Graves desired that his wife's interest should be applied to the payment of his note, but she declined to allow it to be done, and insisted that it should be secured to her. Her husband then agreed that if she would consent to have his note paid out of her interest in the personal estate and the proceeds of the sale of her interest in the realty, he would secure that amount to her separate use by a mortgage on a house and lot in Lebanon. To this Mrs. Graves assented, and on that day, March 14, 1874, the administrators settled with her and her husband. In that settlement Graves's note was credited with $1,000, and he and his wife executed to the administrators a receipt for that sum as so much paid on her distributive share. Mrs. Graves had not then conveyed her interest in the land to her mother, and the latter having sold it to Thomas H. Johnson, a deed was made to him on that day in which Graves and wife united. The deed contains a recital that Mrs. Rosetta Johnson (Mrs. Graves's mother) had purchased the interest of Rosie P. Graves and G. W. Graves, her husband, and paid them therefor, but the evidence shows that the money had not in fact been paid.

On the same day the administrators assigned the residue of Graves's note to Mrs. Johnson, and it may be assumed that it was then agreed that Mrs. Graves would accept it in payment, as far as it would go, for her interest in the land.

The result of the transactions of that day may be thus stated; one thousand dollars of Graves's note held by the administrators had, at

his request, been paid by his wife, and she had agreed to pay the balance out of the proceeds of her interest in the land, in consideration of which he agreed to secure that amount to her separate use by a mortgage on his house and lot.

March 24, ten days afterward, a mortgage was executed in accordance with that agreement, but without the intervention of a trustee, to secure to the separate use of Mrs. Graves the sum of two thousand dollars, and April 18, following, her husband's note was delivered to her in payment of $1,367.09, of the price of her interest in the land, and the difference between that sum and $1,500 was paid to her in cash.

Prior to all these transactions H. C. Harris and George W. Graves had become jointly bound as sureties for E. A. Graves in two debts for $2,000 each; some time in the latter part of that year, but exactly when it is not disclosed by the record. E. A. Graves was adjudged a bankrupt, and Harris having paid the debts, brought this suit December 9, 1874, against George W. Graves for contribution, and sued out an attachment against his property, which was levied on the next day, on the house and lot mortgaged to Mrs. Graves.

She was made a party defendant and her mortgage was attacked as voluntary and fraudulent.

She answered, denying all charges of fraud, and insisting that the mortgage was not voluntary, but was based upon a valuable consideration, and asked that it be upheld and enforced. George W. Graves answered, and among other things, alleged that he was adjudged a bankrupt January 13, 1875, and filing a copy of the adjudication, he resisted any judgment against him personally.

February 5, C. A. Johnson presented his petition adjudging that he had been regularly appointed assignee of the estate of George W. Graves, and had received the register's deed conveying to him all the estate of said Graves and asked to be made a party, which was done, and he then moved to discharge the attachments, but his motion was overruled. The house and lot were subsequently sold under a consent judgment, and the court on final hearing having adjudged to Harris priority over Mrs. Graves, and the fund not being sufficient to pay both, she prosecutes this appeal; and Johnson also prosecutes an appeal claiming the fund as assignee against both Harris and Mrs. Graves.

Johnson's appeal may be disposed of in a few words. He comes in as a claimant of the property in litigation, under his deed of assignment from the register, but he has failed to furnish any evidence

of his appointment, or of the execution of a conveyance to him as assignee, and has therefore failed to manifest any right to the property or its proceeds.

It may be remarked upon the appeal of Mrs. Graves, without entering into an examination in detail of the facts in the record, that the allegation that the mortgage to her was made with the intention to hinder or defraud the creditors of her husband is unsustained. The only question which we need consider at any length is whether the mortgage was voluntary, and on that account invalid, as against the creditors of George W. Graves, and the decision of that question must depend upon an inquiry into the relative rights of Graves and his creditors on the one hand and Mrs. Graves on the other in the interest of the latter in her father's estate.

Before entering upon that question, however, we remark that we do not agree with Mrs. Graves's counsel that in as much as Harris did not pay the debts for which he and George W. Graves were jointly bound, until after the execution of the mortgage, he is to be treated as a subsequent creditor, against whom the mortgage is valid even though it be voluntary.

The debts existed when the mortgage was made, and being bound as surety for their payment, Harris, upon making payment, was subrogated to the rights of the creditors, to whom payment was made to the extent that he was entitled to contribution from a co-surety.

The conflicting claims of married women and the creditors of their husbands have been the subject of repeated adjudications by this court, and the principles upon which such controversies are to be decided seem now to be well settled.

The right of a wife to claim a settlement out of estate descended to her is not confined to cases where the chancellor is called upon to subject such estate to the payment of the debts of the husband, but may be asserted by her by original bill. 2 Story's Equity, Sec. 1414; Chaney on Rights 417; Moore v. Moore, 14 B. Mon. 259. And it is now well settled that even assignees of the husand for value, of the choses of the wife may be compelled to make a settlement upon her out of the estate assigned. *Thomas v. Kennedy,* 4 B. Mon. 235; *Crooks v. Turpin,* 10 Ib. 244; *Moore v. Moore,* 14 Ib. 261.

Counsel for the appellee therefore states the rule too broadly when he says, without qualification, that the law is that the husband is entitled to the distributable share of his wife in the personal estate of her father. The cases cited by him in support of that view are not analogous to this case. *South v. Hay,* 3 B. Mon. 88, was a suit

by the legatees and distributees of William Hay against his executors. South, who was one of the executors, was the husband of one of the distributees, and the court held that he was not bound to account to any one for his wife's share of the estate which was in his hands as executor. No claim was made by the wife to a settlement, and all that was there decided was that the husband was entitled in his settlement to be credited by his wife's distributive share. His election to take a credit had the same effect that the receipt for the money would have had if another had been executor, so that the case decides nothing more than that when the husband had reduced the distributive share of the wife to possession it becomes his absolutely.

In *Miller v. Miller,* 1 J. J. Marsh. 169, the husband being dead, the question was whether his administrator or his surviving wife was entitled to money bequeathed to her during coverture and not received or otherwise disposed of by the husband in his lifetime, and it was held the wife was entitled. That was the only point decided in that case, and there is nothing in the opinion touching the relative rights of the husband and wife or the rights of the wife as against the husband's creditors.

*Jones's Adm'r v. Warren's Adm'r,* 4 Dana 33, was also a contest about the right of survivorship. The note sued on in that case by the administrator of the wife was executed to her during coverture, and the defendant pleaded that her husband survived her and was still living and that the note belonged to him as survivor, and it was held by the court that the plea presented a bar to the action.

There being nothing in the cases cited by counsel, or in any known to the court, inconsistent with the doctrine already announced upon what we regard as ample authority, that the right of the wife to claim a settlement out of estate descended to her may be asserted by original bill at any time before it is actually reduced to possession by the husband. It cannot be doubted that Mrs. Graves had a right at the time she agreed to allow her interest settled upon her, thereby freeing it from the control of her husband and terminating his right to make it his own by reducing it to possession and removing it forever beyond the reach of his creditors. Such a right in Mrs. Graves was wholly inconsistent with an absolute right in her husband to the fund, and as she might have asserted and enforced it in equity against both her husband and his creditors, we see no reason why her husband might not secure it to her in the mode adopted by them.

When parties have done for themselves only that which the chancellor would have done for them if he had been called upon, he will not refuse to recognize its validity.

But it is argued that although the mortgage may be valid as to the sum of $1,367.09, the balance due on Graves's note and which was paid by Mrs. Graves on the 18th of April by a credit on the amount due from her mother for her interest in the land, and which the husband never reduced to possession, it is voluntary and invalid as to the residue. This argument is that the credit on the husband's note, and the receipt given by both husband and wife for the amount, reduced that much of her interest to the possession of the husband, and that when it came into his possession it was absolutely his, freed from all equity in her, and could no more be legally settled upon her afterward than any other money or property owned by the husband.

This argument gives no effect whatever to the established fact that before the husband received the credit, and before the wife would consent to that appropriation of the fund, the husband agreed that if she would consent he would secure the amount to her by mortgage; nor to the further fact that a mortgage was made which was a complete execution of the agreement, and that his creditors are now in a court of equity asking that that executed agreement be set aside for their benefit.

In *Maraman v. Maraman,* 4 Met. 84, cited and relied upon by counsel for Harris, Mrs. Maraman was forced to invoke the aid of the chancellor to enforce the notes she held on her deceased husband, and the administrator, who stood in the room and stead of creditors as far as was necessary to secure the payment in full of their debts, stood on the defensive armed with an equity in other creditors equal to Mrs. Maraman's equity, and, in addition, with a legal right which she did not have.

Another distinction between that case and this, it seems to us, is, that the proceeds of the sales of the wife's land and slaves, which her husband attempted to secure to her by his notes, were paid over to and used by him at his discretion; but in this case the wife's money, instead of being paid to the husband, was, at his request, paid by her direction upon a subsisting debt against him, and we incline to the opinion that she is entitled to be substituted to the rights of the creditor to whom the money was paid.

But we rest our decision, as to the $1,000 credited on the note, upon the ground that the husband's promise to secure that sum to his wife by a mortgage gave her an equitable right, as against him,

to have that agreement performed, and that when it was fully executed his creditors could only reach it through the aid of a court of equity, as it rested upon a sufficient consideration to uphold it.

There are other creditors besides Harris whose rights are involved in this appeal, but as they all, except Hutchinson, who holds a prior mortgage, stand upon the same ground with Harris, we have found it more convenient in considering the case to treat it as if he was the only appellee, but what we have said as to him is intended to apply to all except Hutchins.

The judgment is affirmed as to Johnson, but is reversed as to Mrs. Graves, and the cause is remanded with directions to render a judgment in conformity with this opinion, and to adjudge to Harris any balance remaining after satisfying the mortgages of Hutchins and Mrs. Graves.

*C. S. Hill, C. H. Johnston, for appellants.*
*R. H. Rountree, for appellees.*